UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES MERRELL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-08-348 |
| | § | |
| THE HARTFORD, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day came on to be considered Plaintiff's Motion for Summary Judgment (D.E. 14) and Defendant's Cross-Motion for Summary Judgment (D.E. 17). For the reasons stated herein, the Court DENIES Plaintiff's Motion for Summary Judgment and DENIES Defendant's Cross-Motion for Summary Judgment.

**I.      Jurisdiction**

The Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), because Plaintiff alleges claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").[1]

**II.     Factual and Procedural Background**

Plaintiff James Merrell suffered a work-related accident in 1982 while employed by Otis Engineering Corporation, which resulted in a permanent disability. (D.E. 1 ¶ 5, D.E. 14 ¶ 11.) After his accident, Plaintiff became a participant in the Otis Engineering Corporation Disability Income Plan (the "Plan"), and began to receive insurance benefits from Northwestern National

---

[1] 29 U.S.C. § 1132(e)(1) provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this [ERISA] subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title." For actions brought pursuant to § 1132(a)(1)(B), state courts of competent jurisdiction and federal district courts have concurrent jurisdiction. 29 U.S.C. § 1132(e)(1).

Life Insurance Company.  (D.E. 14 ¶ 11; D.E. 16 at 3.)  In February 1998,[2] The Hartford, Defendant in this action, assumed the administration and payment of the Plan, including the payment of Plaintiff's benefits.  Defendant is both the insurer and the plan administrator.  (D.E. 14 ¶¶ 10-11; D.E. 16 at 3.)

In December 2005, Defendant notified Plaintiff that it believed Plaintiff had been overpaid.  Plaintiff's initial monthly disability benefit was determined in part upon the amount of Social Security Disability Insurance ("SSDI") benefits that Plaintiff received starting in 1982, such that the amount of SSDI benefits would reduce the amount of benefits received from the insurer.  Although the amount of Defendant's initial monthly payment was based on information that Plaintiff initially received $587 per month from SSDI benefits in 1982, Defendant later concluded that Plaintiff had actually received $622 per month, a $35 per month difference.  (D.E. 1 ¶ 6, D.E. 14 ¶ 13.)  As a result, Defendant claimed to have overpaid Plaintiff $35 per month beginning in February 1998, when Defendant took over administration of the Plan, resulting in a total overpayment of $3,325.  (D.E. 14 ¶ 13; D.E. 16 at 4.)  Defendant claimed that it should receive an offset from its payments to Plaintiff based upon the SSDI benefits Plaintiff received.  (D.E. 14 ¶ 13; D.E. 16 at 4.)  Defendant attempted to recoup the alleged overpayment by decreasing or eliminating future payments to Plaintiff.[3]

---

[2] Plaintiff contends that Defendant began administration of the plan in 1996. (D.E. 14 ¶ 12.)  The record appears to support Defendant's position, and the Court uses the February 1998 date at this time. (D.E. 16-2, at 2-3) ("This claim was initially paid by another insurance company and we began paying this claim effective February 1998.")  Both parties agree as to the amount in dispute, regardless of when Defendant began administration of the Plan.

[3] The parties disagree as to the precise manner in which this occurred.  Plaintiff contends that Defendant prematurely terminated his benefits, which would not otherwise have ended until Plaintiff reached age sixty-five. (D.E. 1 ¶ 7, D.E. 14 ¶ 13.)  Defendant contends that it withheld $110 per month from Plaintiff's payments to recover the amount it claimed it was owed over the final 32 months of benefits payments. (D.E. 16 at 4.)  Defendant's version appears to have more support in the record, as a letter from Plaintiff states, "you have no authority to withhold $110 each month from my LTD Benefit check . . . ." (D.E. 16-2 at 58.)  Both parties, however, agree that $3,325 is in dispute, regardless of how it was withheld.

On January 20, 2006, Plaintiff sent Defendant a letter protesting Defendant's decision, to which Defendant responded on January 23, affirming its earlier decision. (D.E. 14 ¶ 13; D.E. 16 at 4.) Plaintiff filed an administrative appeal in February 2006, which Defendant denied in April 2006, upholding its original decision. (D.E. 14 ¶ 13; D.E. 16 at 4-5.) On May 21, 2008, Plaintiff submitted additional information to Defendant in support of his claim, which Defendant again rejected. (D.E. 14 ¶ 13; D.E. 16 at 5.)

Plaintiff filed suit in this Court on October 28, 2008 pursuant to 29 U.S.C. § 1132(a),[4] alleging that Defendant violated ERISA and breached its fiduciary duties under the statute. (D.E. 1 ¶¶ 11-19.) Plaintiff requested that he be awarded all economic and non-economic damages, damages for mental anguish, costs, attorney's fees, and pre- and post-judgment interest. (D.E. 1 ¶ 21.)

On June 23, 2009, Plaintiff filed the present Motion for Summary Judgment. (D.E. 14.) Plaintiff seeks summary judgment with respect to all claims against Defendant, and requests the Court to award Plaintiff all damages, court costs, attorney's fees, and such other relief to which Plaintiff may be justly entitled. (D.E. 14 ¶ 24.) On July 9, 2009, Defendant filed its Response to the Motion for Summary Judgment (D.E. 16), and a Cross-Motion for Summary Judgment (D.E. 17). In its cross-motion, Defendant requests that the Court dismiss Plaintiff's claims with prejudice and award Defendant court costs and all other relief to which it is justly entitled. (D.E. 17 at 19.) Plaintiff filed its Response to Defendant's Cross-Motion on July 17, 2009. (D.E. 19.)[5]

---

[4] Section 1132(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

[5] On July 22, 2009, Defendant filed a Reply to the Response to the Motion for Summary Judgment without seeking leave of the Court. (D.E. 20.) The Court's Scheduling Order provides that "[n]o reply to the opposition to a motion will be filed by a movant without leave of Court on good cause." (D.E. 13 ¶ 4.) The Court therefore does not consider this document in this Order.

**III. Discussion**

**A. Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Minter v. Great Am. Ins. Co. of New York, 423 F.3d 460, 464 (5th Cir. 2005). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000). Standard summary judgment rules control in ERISA cases. Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 225 (5th Cir. 2004).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); First Nat'l Bank of Arizona v. Cities

Serv. Co., 391 U.S. 253, 270 (1968); see also Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (stating that nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' but instead, 'must come forward with specific facts showing that there is a genuine issue for trial.'") (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1024 (5th Cir. 1995). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh the evidence, or draw inferences for the movant. Anderson, 477 U.S. at 255. When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995). Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See e.g., Lafleur v. Louisiana Health Serv. and Indem. Co., 563 F.3d 148, 153 (5th Cir. 2009); Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B. ERISA Section 1132(a)(1)(B) Claim

ERISA provides federal courts with jurisdiction to review benefit determinations by plan administrators. 29 U.S.C. § 1132(a)(1)(B); Duhon v. Texaco, Inc., 15 F.3d 1302, 1305 (5th Cir. 1994).

A claimant under Section 1132(a)(1)(B) has the initial burden of demonstrating entitlement to benefits under an ERISA plan, or demonstrating that the denial of the benefits under the plan is arbitrary and capricious, or an abuse of discretion. Perdue v. Burger King

Corp., 7 F.3d 1251, 1254 n.9 (5th Cir. 1993). Judicial review of an administrator's legal determination of plan terms and eligibility for benefits provisions is de novo "unless the plan expressly conferred upon the plan administrator discretionary authority in making such determinations." Vercher, 379 F.3d at 226. If discretion were granted, the "abuse of discretion" standard would apply instead. In contrast, "for factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard." Pierre v. Connecticut Gen. Life Ins. Co., 932 F.2d 1552, 1562 (5th Cir.) cert. denied, 502 U.S. 973 (1991). When a court reviews an administrator's decision for abuse of discretion, the court should affirm the decision if it is supported by "substantial evidence." Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc., 168 F.3d 211, 215 (5th Cir. 1999). A decision is arbitrary, and thus not supported by substantial evidence, if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." Id. Review of an administrator's decision "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness – even if on the low end." Vega v. Nat'l Life Ins. Servs., 188 F.3d 287, 297 (5th Cir. 1999). In this case, an administrator's factual determination is challenged.

Where, as here, an entity that administers a plan both determines "whether an employee is eligible for benefits and pays benefits out of its own pocket, . . . this dual role creates a conflict of interest." Metro. Life Ins. Co. v. Glenn, __ U.S. __, 128 S. Ct. 2343, 2346 (2008). A reviewing court "should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and . . . the significance of the factor will depend upon the circumstances of the particular case." Id.[6]

---

[6] In Metropolitan Life, the Supreme Court explained:

> "conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not

C.     **Plaintiff's Motion for Summary Judgment**

Plaintiff alleges that Defendant's decision to prematurely terminate his benefits was "unjustified and illegal." (D.E. 1 ¶ 9.) Plaintiff further claims that he is entitled to summary judgment because "[t]here is no substantial evidence in the administrative record to support the defendant's decision," and there are only a "few pages of the administrative record that require review by this Court to determine whether the defendant abused its discretion in terminating the plaintiff's long-term disability benefits." (D.E. 14 ¶¶ 1, 9.) Plaintiff argues that only one document in the record (D.E. 14-2 at 24) shows an initial SSDI payment of $622.40, and that document bears no "indicia of authenticity" to show it was created by the Social Security Administration or any other federal agency. (D.E. 14 ¶ 14.) In contrast, Plaintiff identifies nine items in the record that "have indicia of reliability and . . . show that the plaintiff's initial payment from Social Security Disability was, in fact, $587." (D.E. 14 ¶ 15.) These items are briefly summarized as follows:

1. A Social Security Award Certificate dated October 7, 1982, which states "[t]he amount of your first payment is $587.00." (D.E. 14-2, at 16.)

2. A notice prepared by Mary E. Ainsworth of Northwestern National Life Insurance Company dated October 12, 1982, which attaches the Social Security Award Certificate and explains how Plaintiff's benefits would be calculated. (D.E. 14-2, at 31-33.)

3. A document titled "Social Security Increases" that shows the amount of SSDI payment was $587 per month in June 1982. (D.E. 14-2, at 26.)

4. A notice titled "Referral to 24 Month Unit" dated December 26, 1995, which states "SSD: $ 587.00." (D.E. 14-2, at 29.)

---

limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits."

Metro. Life Ins. Co., 128 S.Ct. at 2351 (internal citations omitted).

5. A copy of a check for a disability payment to Plaintiff, which shows a deduction for the period of $587 for "Social Security." (D.E. 14-2, at 38.)

6. A status report dated June 30, 1982, which shows Plaintiff received "587.00 (SSDI)" and notes that Plaintiff "obtained SSDI award." (D.E. 14-2, at 40.)

7. A document titled "Disability Claim Data," which shows that Plaintiff receives $587 per month from "SS." (D.E. 14-2, at 39.)

8. A document titled "LTD Coverage Worksheet," which shows that Plaintiff receives "S.S." in the sum of $587. (D.E. 14-2, at 5.)

9. A copy of a deposit slip and check, which shows that Plaintiff was paid $587 by the "U.S. Gov't" on or about December 4, 1982, shortly after having received the Award Certificate showing that this amount would be paid. (D.E. 14-2, at 11, 15.)

Plaintiff also alleges that Defendant's adverse benefits decision was motivated in large part by a conflict of interest, as Defendant's determinations are based on "financial and budgetary targets, rather than on the merits presented by each insured's claim." (D.E. 1 ¶ 10; D.E. 14 ¶ 10.)

The Court must first determine whether Plaintiff, as the moving party, has satisfied its burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Plaintiff has failed to meet this burden. Although Plaintiff has identified several parts of the record that support his position, he has not adequately explained why the document that shows an initial payment of $622.40 does not create a genuine issue of material fact as to the amount of the initial payment he received. (D.E. 14-2 at 24-25; D.E. 16-2 at 61-62.) Plaintiff contends only that this document "bears no indicia of authenticity that it was created by the Department of Social Security or any other federal agency," and concludes that "[t]his sole, strange document should not be relied upon to prematurely terminate much-needed long term disability payments." (D.E. 14 ¶ 14.) In its response, Defendant identifies this document as the Master Beneficiary Record ("MBR"), a record originating from the Social Security

Administration, and demonstrates its authenticity. (D.E. 16 at 7.) Specifically, Defendant demonstrates that (1) Plaintiff executed an authorization for Defendant to obtain a copy of the MBR on November 23, 2005 (D.E. 16-2 at 64-65); (2) Defendant obtained the MBR in December 2005 through a law firm specializing in Social Security law, which obtained the report directly from the Social Security Administration (D.E. 16-2 at 60-63); and (3) the MBR is in the form of, and contains the information that the Federal Register, 71 F.R. 1826, requires to be in such a document. (D.E. 16 at 17.)[7] Moreover, Plaintiff acknowledged in an earlier communication that the document was "received from Social Security," although he contended it was "erroneous." (D.E. 16-2 at 45.) From the evidence presented, the Court is satisfied that the MBR is an authentic document. See Fed. R. Evid. 901(b)(4) (authentication established by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."); Fed. R. Evid. 901(b)(7) (authentication established by "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office . . . is from the public office where items of this nature are kept.").

The MBR thus creates a genuine issue of material fact as to the initial amount of Plaintiff's SSDI benefits, and therefore makes summary judgment in favor of Plaintiff inappropriate.

### D. Defendant's Cross-Motion for Summary Judgment

---

[7] Defendant also submitted a Declaration from an individual affiliated with the firm that Defendant retained to obtain the MBR, to demonstrate that the MBR originated from the Social Security Administration. (D.E. 16-3.) Plaintiff objects to this Declaration, arguing "this Court should not consider any documents filed by the defendant that were not in the record when the defendant made the decision being challenged now in this Court." (D.E. 19 at 5.) The case law in the Fifth Circuit is clear that, when assessing factual questions in ERISA disputes, the district court is limited to review of the administrative record. Estate of Bratton v. Nat'l Union Fire Ins. Co., 215 F.3d 516, 521 (5th Cir. 2000). The administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it. Id. The district court may not accept evidence outside of the administrative record, with certain limited exceptions. Id. A court may accept evidence regarding the administrator's interpretation of terms of the plan, and may accept evidence like expert opinions that assists the court in understanding medical terminology or practice related to a claim. Id. As the evidence already in the record establishes the authenticity of the MBR, the Court need not decide at this stage of the proceedings whether the Declaration may be submitted as evidence.

Defendant argues that the MBR is entitled to "great evidentiary weight" because it is an authentic document from the Social Security Administration, and thus constitutes substantial evidence upon which Defendant relied in making its factual determination. Defendant therefore concludes that there are "no meaningful factual disputes in the present case," and it is entitled to summary judgment. (D.E. 17 at 7.)

The Court finds that summary judgment in favor of Defendant is inappropriate, as there is genuine issue of material fact as to the amount of Plaintiff's initial SSDI benefits. Fed. R. Civ. P. 56(c). As Defendant is now the moving party, "the evidence of the [Plaintiff] is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein, 218 F.3d at 399.

As discussed above, Plaintiff has submitted several items that demonstrate the existence of a genuine issue of material fact. These documents include the October 1982 Social Security Award Certificate, which clearly states "[t]he amount of your first payment is $587.00," a statement from Halliburton Company Employees' Trust Long Term Disability Plan, which shows a Social Security offset of $587, and several other documents all of which show initial SSDI payments to Plaintiff of $587. Although these documents do not conclusively establish Plaintiff's position, they do demonstrate the existence of a genuine issue of material fact as to the initial amount of Plaintiff's SSDI payments. While the MBR may be entitled to "great evidentiary weight," as Defendant contends, it alone is not a sufficient basis upon which to grant summary judgment, given the conflicting evidence in the record.

In addition, Defendant has not adequately addressed the conflict of interest created where, as here, the plan administrator both determines "whether an employee is eligible for benefits and pays benefits out of its own pocket." Metro. Life Ins. Co., 128 S. Ct. at 2346; see also Stone v. UNOCAL Termination Allowance Plan, __ F.3d __, 2009 WL 1479405, at *4 (5th Cir. 2009) (stating that "Metropolitan Life announced a new standard for evaluating a conflict of interest," and this standard "comes in to play . . . in considering whether an abuse of discretion has occurred."). Upon review, a court "should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and . . . the significance of the factor will depend upon the circumstances of the particular case." Metro. Life Ins. Co., 128 S. Ct. at 2346. Despite Plaintiff's allegations of a conflict of interest or bias (D.E. 1 ¶ 10; D.E. 14 ¶ 10), Defendant has not presented evidence to demonstrate that it has taken steps to "reduce potential bias and to promote accuracy" by "walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." Id. at 2351. There is little, if any, evidence in the record that would allow the Court to determine how to weigh the conflict of interest in this case.[8] In light of the new standard announced in Metropolitan Life, the lack of evidence on this issue alone counsels against granting summary judgment in favor of Defendant.

---

[8] From the record, it appears that decisions to terminate benefits are made through the "Benefit Management Services" department of The Hartford. (D.E. 14 ¶ 10; D.E. 14-2 at 2). This evidence, however, does not allow the Court to determine whether this department is "walled off" from other departments within the company, or whether sufficient management checks are in place.

## IV.     Conclusion

For the reasons stated above, the Court DENIES Plaintiff's Motion for Summary Judgment (D.E. 14) and DENIES Defendant's Cross-Motion for Summary Judgment (D.E. 17).

SIGNED and ORDERED this 4th day of September, 2009.

                                            _____
                                            Janis Graham Jack
                                            United States District Judge