UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JAMES MERRELL, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. C-08-348 |
| § | |
| THE HARTFORD, § | |
| § | |
| Defendant. § | |

**<u>ORDER</u>**

On September 30, 2009, the above-styled case came on for trial before this Court. After consideration of the evidence presented as well as the arguments of counsel, the Court GRANTS judgment in favor of Plaintiff, and enters the following findings of fact and conclusions of law.

**I.    Findings of Fact**

The following facts are not in dispute. Plaintiff James Merrell suffered a work-related accident in 1982 while employed by Otis Engineering Corporation, which resulted in a permanent disability. After his accident, Plaintiff became a participant in the Otis Engineering Corporation Disability Income Plan (the "Plan"), and began to receive insurance benefits from Northwestern National Life Insurance Company. In February 1998, Hartford Life and Accident Insurance Company, Defendant in this action, assumed the administration and payment of the Plan, including the payment of Plaintiff's benefits. Defendant is both the insurer and the plan administrator.

In December 2005, Defendant notified Plaintiff that it believed Plaintiff had been overpaid. Plaintiff's initial monthly disability benefit was determined in part upon the amount of Social Security Disability Insurance ("SSDI") benefits that Plaintiff received starting in 1982, such that the amount of SSDI benefits would reduce the amount of benefits received from the

insurer. Although the amount of Defendant's initial monthly payment was based on information that Plaintiff initially received $587 per month from SSDI benefits in 1982, Defendant later concluded that Plaintiff had actually received $622 per month, a $35 per month difference. This decision was based upon a Master Beneficiary Record ("MBR") received from the Social Security Administration, which showed the $622 figure.

As a result of this alleged error, Defendant claimed to have overpaid Plaintiff $35 per month beginning in February 1998, when Defendant took over administration of the Plan, resulting in a total overpayment of $3,325. Defendant claimed that it should receive an offset from its payments to Plaintiff based upon the SSDI benefits Plaintiff received. Defendant recouped the alleged overpayment by reducing future benefits payments by $110 per month, starting in January 2006. This was done for the final three years of Plaintiff's eligibility under the Plan (to age 65).

On January 20, 2006, Plaintiff sent Defendant a letter protesting Defendant's decision, to which Defendant responded on January 23, affirming its earlier decision. Plaintiff filed an administrative appeal in February 2006, which Defendant denied in April 2006, upholding its original decision. On May 21, 2008, Plaintiff submitted additional information to Defendant in support of his claim, which Defendant rejected. Plaintiff filed this lawsuit on October 28, 2008.

The only matter in dispute at trial is whether Defendant abused it discretion in concluding that Plaintiff initially received $622 per month in SSDI benefits, rather than $587, resulting in a total overpayment of $3,325. Plaintiff argues that Defendant abused its discretion, and cites the following nine items of evidence in the administrative record to support his position that he initially received $587 in SSDI benefits:

(1) A Social Security Award Certificate showing that the initial amount of Plaintiff's monthly benefit was $587. The document, dated October 7, 1982, was created by the

      Department of Health and Human Services - Social Security Administration, and bears the signature of the Commissioner of Social Security.  (Plaintiff Exh. #4.)

(2) A notice prepared by Mary E. Ainsworth sent to Plaintiff, dated October 12, 1982, which attaches the Social Security Award Certificate.  The notice explains how the insurer would calculate Plaintiff's monthly benefits. (Plaintiff Exh. #8.)

(3) A document showing that the amount of the Social Security Disability payment to Plaintiff was $587 per month. (Plaintiff Exh. #6.)

(4) A document titled "Referral to 24 Month Unit" stating that Plaintiff's "SSD [is] $587."  It contains handwritten notes and appears to have been dated in 1997.  (Plaintiff Exh. #7.)

(5) A copy of a check for a disability payment to Plaintiff, dated in 1987, showing that one of the deductions from the payment was "$587" for "Social Security."  (Plaintiff Exh. #9.)

(6) A document titled "status report" from 1982, stating that Plaintiff was receiving "587.00 (SSDI)" and notes that Plaintiff "obtained SSDI award." (Plaintiff Exh. #11.)

(7) A document titled "Disability Claim Data" showing that Plaintiff is receiving $587 per month from "SS."  (Plaintiff Exh. #10.)

(8) A document titled "LTD Coverage Worksheet" showing that Plaintiff is receiving "S.S." in the sum of $587.  (Plaintiff Exh. #12.)

(9) A copy of a deposit slip for Plaintiff's bank showing that Plaintiff deposited $587 from the "U.S. Gov't" on or about December 4, 1982, shortly after having received the Award Certificate showing that this amount would be paid.  (Plaintiff Exh. #5.)

Defendant did not dispute the authenticity of these documents or object to their introduction into evidence.  Rather, to support its position Defendant cites the MBR, which shows that Plaintiff received $622.40 in SSDI benefits in September 1982.  (Defendant Exh. #20.)  Defendant argues that, as the Court has acknowledged that the MBR is an authentic document and governmental agencies often rely upon the MBR to determine the amount of Social Security benefits one received, it was not an abuse of discretion to rely solely upon this document to determine the initial amount of SSDI benefits that Plaintiff received.  Defense counsel offered possible explanations for the discrepancy between the MBR and the other items in the administrative record, but did not provide evidence to support these explanations.

### III.   Conclusions of Law

For "factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard; that is, federal courts owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment." Pierre v. Connecticut Gen. Life Ins. Co., 932 F.2d 1552, 1562 (5th Cir.) cert. denied, 502 U.S. 973 (1991).  The abuse of discretion standard is "synonymous with arbitrary and capricious review in the ERISA context." Dramse v. Delta Family-Care Disability and Survivorship Plan, 269 Fed. Appx. 470, 478 (5th Cir. 2008) (citing Lain v. UNUM Life Ins. Co. of Am., 279 F.3d 337, 342 (5th Cir. 2002)).  In reviewing a factual determination, the "district court is constrained to the evidence before the plan administrator." Vega v. Nat'l Life Ins. Servs., 188 F.3d 287, 299 (5th Cir. 1999).

When a court reviews an administrator's decision for abuse of discretion, the court should affirm the decision if it is "supported by substantial evidence." Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc., 168 F.3d 211, 215 (5th Cir. 1999).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2005) (quotation marks omitted).  A decision is arbitrary if it is "made without a rational connection between the known facts and the decision or between the found facts and the evidence."  Id.  Review of an administrator's decision "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness – even if on the low end." Vega, 188 F.3d at 297.

Where, as here, an entity that administers a plan both determines "whether an employee is eligible for benefits and pays benefits out of its own pocket, . . . this dual role creates a conflict of interest."  Metro. Life Ins. Co. v. Glenn, __ U.S. __, 128 S. Ct. 2343, 2346 (2008).  A

reviewing court "should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and . . . the significance of the factor will depend upon the circumstances of the particular case." Id.

## IV.    Application

After consideration of the evidence presented at trial as well as the arguments of counsel, the Court finds that Defendant abused its discretion by relying solely upon the MBR to determine that Plaintiff initially received $622 rather than $587 in monthly SSDI benefits. The administrative record contains significant evidence demonstrating that Plaintiff initially received only $587 in monthly SSDI benefits, and Defendant did not object to this evidence when it was introduced at trial. In response, Defense counsel provided only theories, not evidence, to explain the discrepancy between the MBR and the other evidence before the Court. The Court does not accept the arguments of counsel as evidence. The Court finds that the overwhelming amount of credible evidence presented at trial demonstrates that Plaintiff initially received $587 in SSDI benefits.

In making this ruling, the Court does not suggest that an administrator may never rely on an MBR, or that it is an abuse of discretion to do so, but only that in the circumstances of this case – where significant contrary evidence existed and Defendant presented nothing more than conjecture to explain the discrepancy – it was an abuse of discretion to rely solely upon the MBR and discount the conflicting evidence Plaintiff presented.

Plaintiff is thus entitled to damages totaling $3,325 plus interest at a rate of 0.41% per annum, the total amount of long-term disability benefits withheld by Defendant after it concluded that Plaintiff initially received $622 rather than $587 in monthly SSDI benefits.

Pursuant to 29 U.S.C. § 1132(g)(1), the Court exercises it discretion to award Plaintiff attorney's fees in the amount of $11,500, the amount stated in Plaintiff's Motion for Attorney's Fees and supporting Affidavit (D.E. 33, 33-2).  See Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1458 (5th Cir. 1995); Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980).  Plaintiff is also entitled to a conditional amount of $10,000 for preparing a brief in response to any unsuccessful appeal filed by Defendant to the United States Court of Appeals for the Fifth Circuit.

**V.     Conclusion**

For the reasons stated above, Plaintiff is entitled to recover from Defendant:

1.  Damages in the amount of $3,325 plus interest at a rate of 0.41% per annum.

2.  Attorney's fees in the amount of $11,500.  Plaintiff is also entitled to a conditional amount of $10,000 for preparing a brief in response to any unsuccessful appeal filed by Defendant to the United States Court of Appeals for the Fifth Circuit.

Final Judgment shall issue accordingly.

SIGNED and ORDERED this 2nd day of October, 2009.

_____
Janis Graham Jack
United States District Judge